United States Bankruptcy Court
Southern District of Texas

**ENTERED**
September 27, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-31275 |
| **THE TURKEY LEG HUT & COMPANY LLC,** | § § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | CHAPTER 11 |

# MEMORANDUM OPINION

The Turkey Leg Hut, LLC, a debtor out of possession, is now facing a motion to convert or dismiss with prejudice to refiling for 180 days pursuant to 11 U.S.C. § 1112(b) filed by Kevin M. Epstein, the United States Trustee (the "*US Trustee*") for the Southern District of Texas. Turkey Leg Hut, LLC has not filed a response to the US Trustee's motion. Having no response, the US Trustee then filed its expedited motion for entry of default. Brendon D. Singh, the Subchapter V Trustee, ("S*ubchapter V Trustee*") acting under both his expanded powers pursuant to § 1106(a) paragraphs (3), (4), and (7), and his powers under § 1183(b)(5) has filed a response to the US Trustee's expedited motion for entry of default. The Texas Comptroller of Public Accounts, Revenue Accounting Division (the "*Texas Comptroller*") and the Texas Workforce Commission (the "*TWC*"), through the Texas Attorney General's Office, also responded in support of the US Trustee's motion to convert or dismiss case with prejudice but urge dismissal instead.

The Court conducted hearings on July 31, 2024, and August 9, 2024, ordered briefing, and the matter is now ripe for determination.

## I. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

**A. Background**

1. On March 26, 2024, (the "*Petition Date*") Turkey Leg Hut, LLC ("*Debtor*") filed for bankruptcy protection under Subchapter V, Chapter 11 of the Bankruptcy Code[1] initiating this bankruptcy case.

2. On March 27, 2024, the Court appointed the Subchapter V Trustee.[2]

3. On May 3, 2024, the Court issued its order setting June 24, 2024, as the statutory deadline for Debtor to file its plan.[3]

4. On June 5, 2024, Debtor, the Subchapter V Trustee, US Foods and Steven Rogers (collectively, the "*Parties*") filed a "Stipulation and Agreed Order Granting The Removal Of The Debtor In Possession"[4] (the "*Stipulation*").

5. On June 12, 2024, the Court held a hearing and questioned the Parties about the wisdom of entering into the Stipulation and continued the hearing to June 17, 2024.[5]

6. On June 17, 2024, the Court held a further hearing and entered the Stipulation voluntarily removing the debtor in possession.[6]

7. On June 19, 2024, the US Trustee filed "United States Trustee's Motion To Convert Or Dismiss Case With Prejudice"[7] ("*Motion To Convert*").

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.
[2] ECF No. 3.
[3] ECF No. 63.
[4] ECF No. 98.
[5] June 16, 2024 – Courtroom Hearing.
[6] ECC No. 112.
[7] ECF No. 116.

8. On June 24, 2024, Debtor timely filed its plan of reorganization (the "*Plan*").[8]

9. On July 24, 2024, the US Trustee filed its "United States Trustee's Expedited Motion For Entry Of Default"[9] ("*Motion for Default*").

10. On July 24, 2024, the Subchapter V Trustee filed "Subchapter V Trustee's [*sic*] To The United States Trustee's Motion To Convert Or Dismiss Case With Prejudice"[10] (the "*Response to Conversion*"), and "Subchapter V Trustee's Response To The United States Trustee's Expedited Motion For Entry Of Default"[11] (the "*Response to Default*").

11. The Court held hearings on July 31, 2024, and August 9, 2024.[12]

12. On August 23, 2024, the Texas Comptroller and TWC filed "Texas Comptroller Of Public Accounts' Response In Support Of The United States Trustee's Motion To Convert Or Dismiss Case With Prejudice."[13]

13. On September 10, 2024, the Subchapter V Trustee filed his "Notice Of Withdrawal For Response To UST's Motion To Convert Or Dismiss The Case And Response To Expedited Motion For Entry Of Default."[14]

14. On September 23, 2024, the Subchapter V Trustee filed his "Emergency Motion To Convert The Case To Chapter 7"[15] ("*Emergency Motion to Convert*").

15. The Court now issues its instant Memorandum Opinion and accompanying order.

## II.   CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[16] Section 157 allows a district

---

[8] ECF No. 124.
[9] ECF No. 135.
[10] ECF No. 136.
[11] ECF No. 137.
[12] July 31, 2024 Courtroom Min. Entry; August 9, 2024 Courtroom Min. Entry.
[13] ECF No. 153.
[14] ECF No. 159.
[15] ECF No. 164.
[16] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[17] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate.[18] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[19]

This Court may only hear a case in which venue is proper.[20] Pursuant to 28 U.S.C. § 1408, venue is proper in the "domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement." Debtor has its principal place of business in Houston, Texas[21] and therefore, venue of this proceeding is proper.

**B. Constitutional Authority to Enter a Final Order**

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[22] The Motion to Convert pending before this Court is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit

---

[17] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[18] *See* 11 U.S.C. § 157(b)(2)(A) & (O).
[19] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987)).
[20] 28 U.S.C. § 1408.
[21] ECF No. 1 at 1.
[22] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

this Court from entering a final order here.[23] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[24] None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment.[25] These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III.   ANALYSIS

**A.  Whether the Subchapter V Trustee has standing to appear and be heard**

The Subchapter V Trustee initially objected to the Motion to Convert even though the Debtor did not respond.[26] This presented the unique question of whether the lack of a response by the Debtor but one filed by the Subchapter V Trustee to both the US Trustee's Motion to Convert and Motion for Default is authorized by the Code.[27] However, the Subchapter V Trustee subsequently withdrew his objection to the Motion to Convert and Motion for Default and filed his Emergency Motion to Convert.[28] Therefore, the Court need not answer the question of whether a Subchapter V trustee would have constitutional or prudential standing to object to conversion or dismissal in the absence of a response by the debtor.

---

[23] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[24] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").
[25] *See* ECF No. 116 at 2.
[26] ECF No. 136.
[27] *See* June 20, 2024 Min. Entry.
[28] ECF No. 159, and 164.

The Court will next consider the US Trustee's Motion for Default.

### B. The US Trustee's Motion for Default

The Court next considers the US Trustee's Motion for Default. The US Trustee asserts that there have been no objections to its Motion to Convert that he has received within 30 days of filing his Motion to Convert.[29] Although § 1112(b)(3) requires motions to convert to be heard within 30 days of filing,[30] compelling circumstances prevented the court from meeting the time limits established by this paragraph because of the Court's unavailability.

Additionally, § 1112(b)(2) provides that as "except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . ."[31] Specifically, as § 1112(b)(2) requires that the Court conduct a hearing and find cause for dismissal or conversion the US Trustee's Motion for Default cannot be granted.

Accordingly, the US Trustee's Motion for Default is denied. The Court will next consider the US Trustee's Motion to Convert.

### C. Conversion or dismissal under § 1112(b)(1)

Pursuant to § 1112(b)(1), a party in interest may file a motion to dismiss or convert a Chapter 11 case that the Court may grant "for cause."[32] While the Code does not define "cause," § 1112(b)(4) provides a non-exhaustive list of examples that would support dismissal or conversion. When determining "cause," the Court must also consider the totality of the circumstances.[33] Additionally, when

---

[29] ECF No. 135 at 3.
[30] 11 U.S.C. § 1112(b)(3).
[31] 11 U.S.C. § 1112(b)(2).
[32] 11 U.S.C. § 1112(b)(1).
[33] *In re T-H New Orleans, L.P.*, 116 F.3d 790, 802 (5th Cir. 1997).

determining whether to dismiss or convert a case under § 1112, a court is required to apply a burden shifting analysis. Under that analysis, the moving party bears the initial burden to establish "cause" by a preponderance of the evidence.[34] Once the movant shows "cause," the burden shifts to the debtor to establish the exceptions in § 1112(b)(2).[35] However, if the movant demonstrates that there is cause for conversion or dismissal under § 1112(b)(4), then conversion or dismissal is mandatory, unless the court determines the appointment of a Chapter 11 trustee or an examiner under § 1104 is in the best interests of creditors and the estate.[36] However, the appointment of a trustee or examiner under § 1104(a) is not an available option in Subchapter V cases because § 1181 makes § 1104 inapplicable to Subchapter V cases.[37]

A debtor may escape dismissal or conversion under § 1112(b)(2) if they satisfy two prongs. First, a debtor must "specifically identify unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate,"[38] and specifically applicable in this case, a debtor must prove that the grounds for converting or dismissing the case include an act or omission of the debtor, other than the substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation,[39] for which there exists a reasonable justification for the act or omission; and that will be cured within a reasonable period of time.[40]

Thus, to determine whether dismissal or conversion is appropriate this Court must first determine whether cause exists to either dismiss or convert the case. The Code defines "cause" for

---

[34] *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).
[35] *Id.*
[36] *See* 11 U.S.C. § 1112(b)(1).
[37] See 11 U.S.C. § 1112(b)(1). *See also In re M.A.R. Designs & Construction, Inc.,* 653 B.R. 843, 854 (Bankr. S.D. Tex. 2023).
[38] 11 U.S.C. § 1112(b)(2).
[39] 11 U.S.C. § 1112(b)(2), (4)(A).
[40] 11 U.S.C. § 1112(b)(2)(B).

purposes of § 1112(b) with a non-exhaustive enumerated list including, in pertinent part: (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (E) failure to comply with an order of the court; (H) failure timely to provide information or attend meetings reasonably requested by the United States Trustee; and (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.[41] Although section 1112(b)(4) does not specifically enumerate bad-faith conduct as cause for conversion, "[b]ankruptcy courts nevertheless routinely treat dismissal for . . . bad-faith conduct as implicitly authorized by the words for cause."[42] Regardless of the basis for cause, "inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor."[43] The moving party bears the burden of proving cause by a preponderance of the evidence.[44]

Even if this Court finds cause, however, this Court must abstain from dismissal or conversion if "the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" and the debtor or another party in interest establishes: (1) that there is a reasonable likelihood of plan confirmation; and (2) that the grounds for converting or dismissing the case include an act or omission of the debtor other than under § 1112(b)(4)(A).[45] The Court will next consider the US Trustee's Motion To Convert.

---

[41] 11 U.S.C. § 1112(b)(4)(A), (B), (C), (E), (H), (J).
[42] *In re Zamora-Quezada*, 622 B.R. 865, 879 (Bankr. S.D. Tex. 2017) (citing *Marrama v. Citizens Bank*, 549 U.S. 365, n.1, 373, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007)). See *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.").
[43] *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 371-72 (5th Cir. 1987).
[44] *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir.1994).
[45] 11 U.S.C. § 1112(b)(2).

### D. The US Trustee's Motion to Convert

In his Motion to Convert, the US Trustee asserts five separate grounds for conversion or dismissal for cause, to wit, cause exists: (1) under § 1112(b)(4)(B) because Debtor has grossly mismanaged the estate; (2) under § 1112(b)(4)(C) because Debtor has failed to maintain appropriate insurance that poses a risk to the estate; (3) under § 1112(b)(4)(E) because Debtor has failed to comply with court orders; (4) under § 1112(b)(4)(F) because Debtor failed to file any of its monthly operating reports timely and (5) under § 1112(b)(4)(H) because Debtor failed to attend the UST's first two scheduled initial debtor interviews. The Court will consider each.

#### 1. Whether cause exists under § 1112(b)(4)(B),(C),(F), and (H) to convert or dismiss

Under § 1112(4)(C), "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is cause for dismissal or conversion. Debtor has already suffered an uninsured fire loss during the pendency of this bankruptcy case.[46] In response, the Court ordered that by May 17, 2024, Debtor must "provide proof of insurance on all assets to the US Trustee listing the US Trustee as a party of notice."[47] On May 17, 2024, the US Trustee was provided with a "Certificate of Property Insurance," which indicates a $100,000 limit to losses on "Personal Property," "Business Income," and "Extra Expense."[48] The Debtor's schedules indicate that it has office furniture, fixtures, and equipment with a total net book value of $467,891.[49] Thus, the insurance provided is not adequate and poses a risk of loss to the estate, which is cause to dismiss or convert under § 1112(4)(C).

Under § 1112(b)(4)(F), cause includes an "unexcused failure to satisfy timely any filing or reporting requirement established by [title 11] or by any rule applicable to a case under [chapter

---

[46] August 9, 2024 – Courtroom Hearing.
[47] ECF No. 63.
[48] ECF No. 147-5.
[49] ECF No. 33 at 5.

11].”[50] A debtor has a duty to timely file accurate schedules, monthly operating statements ("*MORs*"), and a statement of financial affairs ("*SOFA*").[51] Debtor initially filed a SOFA that indicated no payments were made to insiders within the last year.[52] Weeks later, Debtor amended its SOFA to show that Nakia Price, Debtor's owner and representative, was paid $245,806 over the year preceding bankruptcy.[53] Moreover, the US Trustee asserts that Debtor's representative testified in the May 30, 2024 § 341 meeting that her husband Lyndell Price and the Debtor's minority owner, Carl Moore, received money from the Debtor over the past year, but has not disclosed the amounts transferred to those individuals.[54] The Debtor nor the Subchapter V Trustee contest this fact. Thus, Debtor failed to timely disclose important information related to Chapter 5 causes of action in its SOFA. The Debtor also filed its first MOR on May 20, 2024, nearly a month late.[55] It filed its second MOR on June 7, 2024, nearly three weeks late.[56] Debtor's failure to timely file an accurate SOFA and MORs constitutes cause to dismiss or convert under § 1112(b)(4)(F).

Section 1112(b)(4)(H) provides that cause exists to convert or dismiss for "failure timely to provide information or attend meetings reasonably requested by the United States trustee."[57] A debtor's failure to timely provide information reasonably requested by the US Trustee does not need to be "unexcused" to constitute cause.[58] Subchapter V debtors have the responsibility to attend meetings scheduled by the US Trustee, including initial debtor interviews ("*IDIs*").[59] The US Trustee asserts that Debtor failed to appear at scheduled IDIs on numerous occasions as

---

[50] 11 U.S.C. § 1112(b)(4)(F).
[51] 11 U.S.C. § 1116(3), 1187(b).
[52] ECF No 33 at 40.
[53] ECF No. 75 at 13.
[54] *See* May 30, 2024 § 341 Meeting; ECF No. 116 at 5.
[55] ECF No. 80.
[56] ECF No. 105.
[57] 11 U.S.C. § 1112(b)(4)(H).
[58] *Andover Covered Bridge, LLC v. Harrington* (*In re Andover Covered Bridge, LLC*), 553 B.R. 162, 173-74 (B.A.P. 1st Cir. 2016).
[59] *See* 11 U.S.C. § 1116(2), 1187(b).

required by 11 U.S.C. § 1116(2).[60] Debtor nor the Subchapter V Trustee contest this fact. Debtor's unexcused repeated failures to appear at the IDIs constitutes cause to dismiss or convert under § 1112(b)(4)(H).

Under § 1112(b)(4)(B) "gross mismanagement of the estate" is cause for dismissal or conversion. A debtor in possession is vested with significant power under the Bankruptcy Code and that power comes with certain responsibilities.[61] A debtor in possession owes a fiduciary duty to its creditors.[62] Gross mismanagement is a breach of that duty.[63] Simple mismanagement is insufficient for a finding of gross mismanagement of the estate, but simple misconduct can collectively demonstrate gross mismanagement of the estate.[64] Collectively, the Court finds that Debtor's unexcused failure to attend IDIs, disclose pertinent information in the SOFA, timely file MORs, and maintain insurance to protect estate assets constitutes gross mismanagement of the estate under § 1112(b)(4)(B).

2. **Whether cause exists under § 1112(b)(4)(E) to convert or dismiss because Debtor failed to comply with court orders**

Under § 1112(b)(4)(E), "failure to comply with an order of the court" is cause for dismissal or conversion. A debtor has the obligation to strictly abide by the bankruptcy court's orders.[65] Section 1112(b)(4)(E) embodies that principle.[66] "Cause to convert pursuant to § 1112(b)(4)(E) exists if a debtor fails to comply with a single order; a pattern of non-compliance is not required

---

[60] ECF No. 116 at 6.
[61] *In re Haydel Props., LP*, No. 12-50048, 2013 Bankr. LEXIS 5782, at *11-12 (Bankr. S.D. Miss. Mar. 11, 2013) (citing COLLIER ¶ 1112.04[6][b] (*quoting In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007)).
[62] *In re Ironside, LLC,* No. 20-34222, 2022 Bankr. LEXIS 409, at *4 (Bankr. S.D. Tex. Feb. 18, 2022).
[63] *In re M.A.R. Designs & Constr., Inc.*, 653 B.R. 843, 857 (Bankr. S.D. Tex. 2023).
[64] *Id.*
[65] *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) (citing *Babakitis v. Robino* (*In re Robino*), 243 B.R. 472, 487 (Bankr. N.D. Ala. 1999)).
[66] *In re Ford Steel, LLC*, 629 B.R. 871, 888 (Bankr. S.D. Tex. 2021).

by the statute."[67] Section 1112(b)(4)(E) does not require a debtor's non-compliance to be willful, in bad faith, or fraudulent.[68]

The US Trustee asserts that pursuant to § 1112(b)(4)(E), cause exits to convert or dismiss this case because Debtor has failed to comply with Court orders, specifically failure to file all outstanding Federal Tax Returns by May 17, 2024; failure to deposit the sum of $83,000 to Debtor's counsel's IOLTA account by May 31, 2024; and failure to attend § 341 meetings.[69]

This Court issued an order requiring Debtor to file all outstanding Federal Tax Returns by May 17, 2024, which Debtor failed to comply with.[70] Debtor waited until its deadline of May 17, 2024 to request a motion to extend the deadline to file its tax returns, which was subsequently denied by the Court.[71] Debtor has still not provided proof of filed Federal Tax Returns for the years 2021-2024.

The Court ordered Debtor to "transfer $83,000.00 to its Counsel to be held in Debtor's IOLTA Account (separately) to provide for the U.S. Foods PACA Claim" by May 31, 2024.[72] After this deadline passed, Debtor's counsel notified the US Trustee that Debtor had only deposited $10,000.[73] Debtor has still not provided proof that the full $83,000.00 has been deposited.[74]

The Court ordered Debtor to "comply with all of the requirements as set forth in 11 U.S.C. §1116 including . . . attending meetings scheduled by the court or the U.S. Trustee."[75] On May 1, 2024, a § 341 meeting was held but it was continued to May 17, 2024.[76] Debtor appeared remotely

---

[67] *In re M.A.R.*, 653 B.R. at 862 (citing *In re Hoyle*, 2013 Bankr. LEXIS 420, at *30-31 (Bankr. D. Ida. Jan. 17, 2013).
[68] *Id.*
[69] ECF No. 116 at 8-9.
[70] ECF No. 63, and 112.
[71] ECF No. 77 and 97.
[72] ECF No. 63.
[73] ECF No. 161-4.
[74] *See* ECF No. 161 at 4.
[75] ECF No. 63.
[76] *See* May 1, 2024 § 341 Meeting Min. Entry.

for a brief time at the meeting on May 17, but was dropped because of technical difficulties and did not return on the call, so the meeting was continued to May 24, 2024.[77] Debtor failed to appear at the § 341 meeting held on May 24, 2024, and it was continued to May 30, 2024, which Debtor attended.[78] However, aside from an unexplained conflict, Debtor would not offer an excuse for the absence from the prior meeting.[79]

This Court finds that Debtor has engaged in multiple violations of this Court's May 3, 2024 Order[80] when it failed to file post-petition tax returns, deposit $83,000.00 into its IOLTA account, and appear at a § 341 meeting. These violations constitute cause for dismissal or conversion under § 1112(b)(4)(E).

### E. The Texas Comptroller and TWC's Motion To Dismiss

Pursuant to § 1112(b)(4)(I), "failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief" is cause for dismissal or conversion.

The Texas Comptroller and TWC assert that this case should be dismissed pursuant to § 1112(b)(4)(I)[81] because Debtor is delinquent in reporting and paying post-petition sales, mixed beverage, and unemployment taxes to the Texas Comptroller and the TWC.[82]

The Texas Comptroller timely filed an administrative claim of 35,707.10 for sales taxes,[83] and TWC timely filed an administrative claim of $1,434.01 for unemployment taxes.[84] These

---

[77] *See* May 17, 2024 § 341 Meeting. Min. Entry.
[78] *See* May 30, 2024 § 341 Meeting Min. Entry; May 24, 2024 § 341 Meeting Min. Entry.
[79] *See* May 30, 2024 § 341 Meeting Min Entry; ECF No. 116 at 3.
[80] ECF No. 63.
[81] 11 U.S.C. § 1112(b)(4)(I).
[82] ECF No. 153 at 2, ¶ 5.
[83] *See* Bankr. Claim 18-1 at 2.
[84] *See* Bankr. Claim 21-1 at 2.

administrative claims, to which Debtor has not objected to, are for taxes that have accrued post-petition.[85] Debtor has not paid any of these post-petition taxes.

The Texas Comptroller and the TWC also assert that Debtor owes them $111,518.11 in sales and mixed beverage sales/receipt taxes that accrued post-petition.[86] However, there has been no admissible evidence presented to this Court that supports this $111,518.11 figure. Nonetheless, because Debtor has failed to file post-petition tax returns[87] and pay the administrative tax claims,[88] there is cause to dismiss or convert under § 1112(b)(4)(I).

### F. Whether the Court must abstain from dismissal or conversion under § 1112(b)(2)

Even if there is cause to convert or dismiss, this Court must abstain from dismissing or converting the case to Chapter 7 if "the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" and the debtor or another party in interest establishes: (1) that there is a reasonable likelihood of plan confirmation; and (2) that the "grounds for converting or dismissing the case include an act or omission of the debtor other than under [§ 1112(b)(4)(A)] (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court."[89]

This Court does not find any unusual circumstances that establish that conversion or dismissal is not in the best interest of creditors. Further, neither Debtor nor any other party in interest have presented evidence to demonstrate that there is a reasonable likelihood of plan success

---

[85] *See* 11 U.S.C. § 503(b).
[86] ECF No. 153 at 3.
[87] *See supra*, Section III.D.2.
[88] *See supra*, notes 83–85 and accompanying text.
[89] 11 U.S.C. § 1112(b)(2).

or that there is a reasonable justification for Debtor's acts or omissions that can be cured. Indeed, all parties that were heard on this matter supported either conversion or dismissal.[90]

The Court will now address whether conversion or dismissal is appropriate.

### G. Whether conversion or dismissal is appropriate

The Subchapter V Trustee requests conversion.[91] The Texas Comptroller and TWC request dismissal,[92] while the US Trustee requests either dismissal or conversion but notes that conversion is preferable.[93] Per § 1112(b)(1), whether a Chapter 11 case should be dismissed or converted depends on what is "in the best interest of creditors and the estate."[94] The Court has broad discretion to determine whether conversion or dismissal is in the best interests of the creditors and the estate.[95]

"The best interests of the estate turns on whether its economic value is greater in or out of bankruptcy."[96] In assessing economic value, the Court should consider what assets would be available for a Chapter 7 trustee to liquidate and administer for the benefit of unsecured creditors if the case were converted.[97] Generally, when the estate has no assets with equity that a trustee could liquidate to pay unsecured creditors, dismissal is appropriate.[98] Conversion is preferable when there are estate assets with equity.[99] According to Debtor's schedules, Debtor has $18,454.84

---

[90] ECF No. 164, 153, and 155.
[91] ECF No. 164.
[92] ECF No. 153.
[93] ECF No. 116 at 11 n.2 ("Conversion appears preferable to dismissal . . . .").
[94] 11 U.S.C. § 1112(b)(1).
[95] *Solomon v. Milbank* (*In re Solomon*), No. 96-11201, 1997 U.S. App. LEXIS 41462, at *13 (5th Cir. Sep. 25, 1997); *In re TMT Procurement Corp.*, 534 B.R. 912, 921 (Bankr. S.D. Tex. 2015).
[96] *In re Delta AG Grp., LLC*, 596 B.R. 186, 201 (Bankr. W.D. La. 2019).
[97] *Id.*
[98] *Id.*
[99] *Id.*

of equity in an automobile.[100] Although this is a small amount of equity, other factors favor conversion.

"The Court may also consider the preferences expressed by the parties in interest, especially neutral third parties such as the United States Trustee."[101] Although the Texas Comptroller and the TWC request dismissal,[102] the neutral third parties prefer conversion.[103] Here, the Subchapter V Trustee, in his Emergency Motion to Convert, requests conversion to Chapter 7.[104] The US Trustee requests either conversion or dismissal but indicates in his Motion to Convert that "Conversion appears preferable to dismissal."[105]

Another factor is "the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors."[106] Debtor has admitted that it transferred money to insiders, Lyndell Price and Carl More, in the year preceding bankruptcy, but has not disclosed the amount of money transferred.[107] Moreover, Debtor's prepetition transfer of $245,806.00 to Nakia Price, Debtor's owner, was not disclosed until it amended its SOFA approximately two months after this bankruptcy case was filed.[108] These transfers indicate there are potential Chapter 5 causes of action that a Chapter 7 trustee would be able to recover for the benefit of creditors if this case was converted.[109]

---

[100] ECF No. 33 at 2–16.
[101] *In re Sandia Resorts, Inc.*, 562 B.R. 490, 496 (Bankr. D.N.M. 2016); *In re Mazzocone*, 183 B.R. 402, 411-12 (Bankr. E.D. Pa. 1995).
[102] ECF No. 153.
[103] ECF No. 116, and 164.
[104] ECF No. 164.
[105] ECF No. 116 at 11 n.2.
[106] *In re Sandia Resorts, Inc.*, 562 B.R. at 496; *In re Davis*, No. 23-00432, 2024 Bankr. LEXIS 2160, at *7 (Bankr. D. Haw. Sep. 16, 2024).
[107] *See* May 30, 2024 § 341 Meeting; ECF No. 116 at 5; *supra* Section III.D.1.
[108] *See* ECF No. 75 at 13.
[109] *In re H2D Motorcycle Ventures, LLC*, 617 B.R. 625, 635 (Bankr. E.D. Wis. 2020) (finding that the possibility that a Chapter 7 trustee would be able to recover funds for creditors from potential fraudulent and preferential pre-petition transfers was a factor in determining cause to convert).

Therefore, considering the totality of the circumstances, the Court finds that conversion is in the best interests of the estate and the creditors.

### IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED September 27, 2024

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge